UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STANTON E. WEAVER, JR.,

               Plaintiff,

v.                                                                      1:23-CV-1518
                                                                        (GTS/DJS)
NEW YORK STATE UNIFIED COURT SYSTEM;
NEW YORK STATE JUDICIAL REVIEW
COMMITTEE; CHAD BALZER; BALZER &
LEARY, PLLC; WILLIAM NEWMAN; BECKER,
GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP;
and FLEISCHMAN BONNER & ROCCO LLP,

               Defendants.
_____

APPEARANCES:                                                            OF COUNSEL:

STANTON E. WEAVER, JR.
  Plaintiff, *Pro Se*
71 Schultze Street
Canajoharie, NY 13317

HON. LETITIA JAMES                                                      MARK J. DOLAN, ESQ.
NYS Office of the Attorney General                                     Assistant Attorney General
  Counsel for NY State Defendants
The Capitol
Albany, NY 12224

OBERHEIDEN PC                                                          WILLIAM H. NEWMAN, ESQ.
  Counsel for Defendants Balzer, Newman,
   and Balzer & Leary, PLLC
30 Wall Street, 8th Floor
New York, NY 10005

BECKER, GLYNN, MUFFLY, CHASSIN &                                      WALTER E. SWEARINGEN, ESQ.
HOSINSKI, LLP
  Counsel for Itself
299 Park Avenue, 16th Floor
New York, NY 10171

FLEISCHMAN BONNER & ROCCO LLP                                         PATRICK L. ROCCO, ESQ.

   Counsel for Itself                                    SUSAN M. DAVIES, ESQ.
81 Main Street, Suite 515
White Plains, NY 10601

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* civil rights action filed by Stanton E. Weaver, Jr. ("Plaintiff") against the New York State Unified Court System, the New York State Judicial Review Committee, Chad Balzer, Balzer & Leary PLLC, William Newman, Becker, Glynn, Muffly, Chassin & Hosinski LLP ("Becker Firm"), and Fleischman Bonner & Rocco LLP ("Fleischman Firm")  (collectively "Defendants"), are the following four motions: (1) a motion to dismiss filed by Defendants Balzer, Newman, and Balzer & Leary ("Balzer and Newman Defendants") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); (2) a motion to dismiss filed by Defendant Becker Firm pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); (3) a motion to dismiss filed by Defendant Fleischman Firm pursuant to Fed. R. Civ. P. 8(a)(2), 9(b), 12(b)(1), and 12(b)(6); and (4) a motion to dismiss filed by Defendants New York State Unified Court System and New York State Commission on Judicial Conduct s/h/a New York State Judicial Review Committee ("State Defendants") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Dkt. Nos. 8, 21, 29, 39.)  For the reasons set forth below, Defendants' motions are granted and Plaintiff's Complaint is dismissed.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, in his *pro se* Complaint, Plaintiff alleges that the various Defendants worked together to deprive him of his Fourteenth Amendment right to equal protection through the

following actions: (1) the Balzer and Newman Defendants, Defendant Becker Firm, and Defendant Fleischman Firm filed and pursued motions in the state-court action that Plaintiff alleges were fraudulent and frivolous and made false statements in their representations to the courts related to those actions; (2) Defendant New York State Unified Court System, through various Family Court, Supreme Court, and Appellate Division judges, issued and upheld fraudulent decisions that were in conflict with the terms of the parties' controlling divorce stipulation agreement, and it further failed to properly respond to Plaintiff's Freedom of Information Law ("FOIL") requests for information related to various Appellate Division judges; and (3) Defendant New York State Commission on Judicial Conduct failed to properly investigate Plaintiff's complaints about the fairness and legality of the state-court proceedings. (*See generally* Dkt. No. 1.)  Generally, based on these factual allegations, Plaintiff claims as follows: (1) his "right to appeal" has been violated by the fraudulent actions of Defendants; (2) his right to "justice and 'equal protection under the law'" has been denied by Defendants; (3) Defendant Balzer, Defendant Newman, and their respective law firms engaged in the "illegal aiding and abetting of Judge Tomlinson's unjust acts"; and (4) justice "has been delayed and denied by the fraudulent decisions" of Judge Tomlinson and the Appellate Division, and by the related "cover-up" of their actions by the Appellate Division, the New York Unified Court System, and the New York State Commission on Judicial Conduct.  (*Id.*)

Construing this Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has asserted the following claims: (1) a violation of his equal protection rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983; (2) a violation of his equal protection rights under Article 1, Section 11 of the New York Constitution; (3)

3

conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985; and (4) a violation of his

due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983.[1]

B.    **Parties' Briefing on Defendants' Motions to Dismiss**

1.    **Law Firm and Attorney Defendants' Motions to Dismiss**

Because the arguments raised by the Balzer and Newman Defendants, Defendant Becker

Firm, and Defendant Fleischman Firm are all essentially the same and/or apply to the claims

against all those Defendants, the Court will discuss them together for the sake of brevity.

a.    **Law Firm and Attorney Defendants' Memoranda of Law**

Generally, in support of their collective motions, the relevant Defendants make four

arguments.  (Dkt. No. 8, Attach. 1; Dkt. No. 21, Attach. 1; Dkt. No. 29, Attach. 1.)  First, these

Defendants argue that Plaintiff's Complaint should be dismissed for lack of subject-matter

jurisdiction based on either the *Rooker-Feldman* doctrine or the domestic relations exception.

(Dkt. No. 8, Attach. 1, at 7-9; Dkt. No. 21, Attach. 1, at 9-12; Dkt. No. 29, Attach. 1, at 10-11.)

Defendant Fleischman Firm relatedly argues that, even if subject-matter jurisdiction exists,

Plaintiff's claims should be dismissed because they are barred by collateral estoppel given that

they seek to re-litigate issues that have already been decided in a prior action.  (Dkt. No. 29,

Attach. 1, at 9-10.)

Second, these Defendants argue that Plaintiff has failed to state a federal law claim

because he has not sufficiently alleged that any of them are state actors or were acting under the

---

[1]    Although the due process claim is less overt than the other three claims, it can be
reasonably extrapolated from Plaintiff's intent to assert claims of a denial of his right to appeal
and a denial of justice due to fraudulent decisions by Judge Tomlinson and the Appellate
Division in particular.

4

color of state law.  (Dkt. No. 8, Attach. 1, at 9-11; Dkt. No. 21, Attach. 1, at 12-14.)  They argue

further that, to the extent Plaintiff raises any claim of fraudulent activity, Plaintiff has not alleged

facts sufficient to plead fraud under the applicable legal standard.  (Dkt. No. 8, Attach. 1, at 12-

13; Dkt. No. 29, Attach. 1, at 13-15.)  Defendant Fleischman Firm additionally argues that

Plaintiff has failed to plead a claim of conspiracy under 42 U.S.C. § 1985 because he has not

alleged facts to plausibly suggest any type of agreement between the relevant attorney and law

firm Defendants and the State Defendants.  (Dkt. No. 29, Attach. 1, at 12-13.)  Defendants

Balzer and Balzer & Leary argue also that any claims against them specifically pursuant to 42

U.S.C. § 1983 are barred by the applicable three-year statute of limitations.  (Dkt. No. 8, Attach.

1, at 10.)

Third, these Defendants argue that, should the Court find that subject-matter jurisdiction

is lacking or that Plaintiff's federal claims must be dismissed, his pendant state law claims must

also be dismissed because the Court has no basis to assert jurisdiction over those claims due to

the fact that the parties are all domiciled in New York (and thus diversity jurisdiction does not

exist) and Plaintiff has not provided any allegations to plausibly suggest that his damages in this

case would exceed the relevant jurisdictional threshold.  (Dkt. No. 8, Attach. 1, at 10; Dkt. No.

21, Attach. 1, at 14-15.)

Fourth, these Defendants argue that Plaintiff should not be granted leave to amend the

Complaint because any amendments would be futile due to an inability to establish subject-

matter jurisdiction, the fact that he has not shown that he could provide additional allegations to

remedy the deficiencies in his asserted claims, and the fact that he has a dilatory motive of

seeking to delay the enforcement of a state-court settlement that was entered into more than six

years ago.  (Dkt. No. 8, Attach. 1, at 13-14; Dkt. No. 21, Attach. 1, at 15-16; Dkt. No. 29, Attach. 1, at 16.)

### b.    Plaintiff's Opposition Memoranda of Law

Generally, throughout his response briefs, Plaintiff makes four arguments.  (Dkt. Nos. 14, 32, 33.)  First, Plaintiff argues that the relevant Defendants violated his equal protection and due process rights by bringing and continuing to pursue fraudulent litigation and motions and thereby aided and abetted the State Court Defendants to issue fraudulent decisions against him.  (Dkt. No. 14, at 1-2, 8-9; Dkt. No. 32, at 3-9; Dkt. No. 33, at 2-4.)  As part of this claim, Plaintiff also argues that all Defendants engaged in a conspiracy to deprive him of his constitutional rights.  (Dkt. No. 32, at 4-5, 8-9.)

Second, Plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable to this case because (a) he has alleged that the outcomes in the state-court proceedings were the product of fraud and he therefore did not lose in those proceedings given that he was deprived of a fair trial and fair appeals, (b) he is not complaining of injuries caused by the state court judgments but rather of violations of his equal protection and due process rights, and (c) although some of the decisions were rendered before he filed this federal action, he is not asking for review of any of those judgments.  (Dkt. No. 14, at 8; Dkt. No. 32, at 9-10.)

Third, Plaintiff argues that the domestic relations exception to subject-matter jurisdiction also does not apply because "[t]his is not a case 'over factual disputes related to domestic relations'" but rather "a case of lies and fraud that have violated the Plaintiff's 'equal protection' right."  (Dkt. No. 14, at 8; Dkt. No. 32, at 10-11.)

Fourth, Plaintiff argues that his claims are not barred by collateral estoppel because he was not provided a full and fair opportunity to litigate issues in the prior state-court proceedings as a result of fraud, and, in any event, he is not attempting to relitigate any matrimonial disputes, but rather the alleged violations of his civil rights.  (Dkt. No. 33, at 2.)

### c.      Law Firm and Attorney Defendants' Reply Memoranda of Law

Generally, in their collective reply briefs, the relevant Defendants make five arguments. (Dkt. Nos. 15, 34, 37.)  First, these Defendants argue that the *Rooker-Feldman* doctrine applies in this case despite the fact that Plaintiff has alleged fraud because his claims seek a review of the underlying state-court judgments (regardless of whether he frames them as such) and there is no doubting that he indeed lost in those state-court proceedings.  (Dkt. No. 15, at 5-7; Dkt. No. 34, at 4-5.)  They relatedly argue that Plaintiff has not pled any fraud with the specificity required under Fed. R. Civ. P. 9(b).  (Dkt. No. 15, at 7-8; Dkt. No. 37, at 3.)

Second, these Defendants argue that Plaintiff's Complaint must be dismissed alternatively based on the domestic relations exception because that exception applies even where fraud is alleged, he has not pled such fraud with particularity, and the purported fraudulent actions are rooted in a dispute over the terms of Plaintiff's divorce.  (Dkt. No. 15, at 8-9.)

Third, these Defendants argue that Plaintiff has not challenged their arguments that he has failed to state a constitutional claim on the basis that he has not plausibly alleged that the relevant Defendants were state actors or acted under the color of state law, or that they engaged in any type of conspiracy with the State Court Defendants.  (Dkt. No. 15, at 10; Dkt. No. 34, at 6-7; Dkt. No. 37, at 2-3.)

Fourth, these Defendants argue that, even if subject-matter jurisdiction exists, if Plaintiff's federal claims are dismissed, there is no basis for diversity jurisdiction over Plaintiff's state law claims because all parties are domiciled in New York and Plaintiff has not alleged that the amount in controversy is sufficient. (Dkt. No. 15, at 10.)

Fifth, these Defendants argue that Plaintiff has also failed to state any additional state law tort claim such as defamation or infliction of emotional distress. (Dkt. No. 15, at 10-11.)

### 2.    State Defendants' Motion to Dismiss

#### a.    State Defendants' Memorandum of Law

Generally, in their memorandum of law, the State Defendants make seven arguments. (Dkt. No. 39, Attach. 1.) First, the State Defendants argue that Plaintiff's Complaint must be dismissed for lack of subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. (*Id.* at 9-11.)

Second, the State Defendants argue that the Complaint alternatively should be dismissed based on the domestic relations exception to federal jurisdiction because all of Plaintiff's alleged injuries stem from the state court's rulings in Plaintiff's divorce proceedings. (*Id.* at 11-12.)

Third, the State Defendants argue that Plaintiff's claims against them are barred by the Eleventh Amendment because both State Defendants are considered agencies or departments of New York State. (*Id.* at 12-13.)

Fourth, the State Defendants argue that Plaintiff's claims against them are also barred by judicial immunity because the actions taken by the relevant judges of the New York Unified Court System were all within those judges' judicial capacity and the actions of the New York

State Commission on Judicial Conduct were discretionary and/or of a quasi-judicial nature.  (*Id.* at 13-15.)

Fifth, the State Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff does not have a federal constitutional right to an investigation of his complaints against the various judges who rendered rulings in the state-court proceedings, or a constitutional right under either the federal or New York constitutions to have a judge investigated or disciplined by the New York State Commission on Judicial Conduct.  (*Id.* at 15-16.)

Sixth, the State Defendants argue that, if the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims.  (*Id.* at 16-17.)

Seventh, the State Defendants argue that Plaintiff should not be granted leave to amend his Complaint because repleading would be futile in this instance due to the lack of subject-matter jurisdiction and other substantive defects that cannot be cured.  (*Id.* at 17-18.)

### b.    Plaintiff's Opposition Memorandum of Law

Generally, in his response memorandum, Plaintiff makes eight arguments.  (Dkt. No. 45.) First, Plaintiff argues that the State Defendants violated his rights to equal protection and due process by "knowingly issuing[] multiple, fraudulently wrong decisions against the Plaintiff, in multiple courts, over 5 years, culminating in the fraudulent Appellate decisions."  (*Id.* at 4-5.)

Second, Plaintiff argues that New York State waived its Eleventh Amendment immunity to suit for equal protection violations in the case of *Brown v. State of New York*, 674 N.E.2d 1129 (N.Y. 1996), but that, even if the State has not waived its immunity, or to the extent it has not

waived immunity as to due process violations, the Court should "exercise their 'equitable powers' and provide the Plaintiff relief" based on "the 'extraordinary circumstances' and 5-year duration of these violations" that show that the state courts would be incapable of providing Plaintiff with a fair trial.  (*Id.* at 5-7, 9.)  As a corollary to this argument, Plaintiff argues that a federal court may intervene in state proceedings under circumstances that would otherwise warrant abstention if the plaintiff shows bad faith or other unusual circumstances that call for equitable relief.  (*Id.* at 5-6.)

Third, Plaintiff argues that the *Rooker-Feldman* doctrine does not apply in this case because (a) he did not lose in the state-court proceedings given that he was denied his right to a fair trial and right to appeal, (b) he filed this federal action before the final state-court judgment because he "currently has an appeal pending in the 3rd Appellate Division to address the fraudulent contempt charge," and "has a motion for 'leave to appeal' pending in the Court of Appeals, to address all the original fraudulent Appellate decisions," the response to which is "now way overdue," (c) he is not complaining of injuries caused by the state-court judgments but rather by the violation of his constitutional rights during those proceedings, and (d) although some of the judgments had been rendered before he filed this federal lawsuit, he is not asking for review of those and they are nevertheless not final given that they are pending appeal.  (*Id.* at 7-8.)

Fourth, Plaintiff argues that the domestic relations exception does not apply because he is not asking the Court to review the state court's findings in his divorce action but rather to find that his constitutional rights have been violated by the State Defendants' actions.  (*Id.* at 8.)

Fifth, Plaintiff argues that "[t]his case is a concrete example why 'Judicial Immunity' should cease to exist" and that "[t]he unprecedented, insidious, egregious, and immoral disgrace, brought by NY States's [sic] judges (court and JRC) should bring down the judicial immunity shield for this case, but given the history and NY States' [sic] reputation, the Plaintiff has little hope the 'right thing' will ever be done, and does not pursue this avenue." (*Id.* at 9.)

Sixth, Plaintiff argues that he has stated claims upon which relief can be granted in federal court based on his previous arguments related to Eleventh Amendment immunity and the State Defendants' bad-faith actions. (*Id.* at 10.)

Seventh, Plaintiff argues that the Court should exercise supplemental jurisdiction over his state law claims due to the State Defendants' alleged bad faith actions that would prevent Plaintiff from receiving a fair trial in any New York court. (*Id.*)

Eighth, Plaintiff argues that he should be granted leave to amend if necessary given the "unprecedented" "level of conspiracy and violation of [his] rights." (*Id.*)

### c.  State Defendants' Reply Memorandum of Law

Generally, in their reply memorandum, the State Defendants make seven arguments. (Dkt. No. 48.)  First, the State Defendants argue that the *Rooker-Feldman* doctrine applies in this case because (a) it is established that Plaintiff lost in state court based on the decisions he appended to the Complaint, (b) all the harm he complains of from the alleged constitutional violations stems from the state-court judgments he believes are fraudulent, and (c) despite his new assertions that the relevant state-court judgments are not final, he stated in his Complaint that he is seeking redress for those judgments and nothing in the Complaint confirms that any appeals are pending related to the state-court decisions that are relevant to this action. (*Id.* at 4.)

Second, the State Defendants argue that the domestic relations exception also applies because the alleged constitutional violations all stem from actions taken in the adjudication of issues related to his divorce proceedings and subsequent appeals.  (*Id.* at 5.)

Third, the State Defendants argue that Plaintiff's claims against them are barred by the Eleventh Amendment and that they have not waived that immunity as to any of Plaintiff's claims.  (*Id.* at 5-6.)

Fourth, the State Defendants argue that Plaintiff's claims against them are also barred by judicial immunity and that Plaintiff has failed to raise any substantive opposition to this argument, instead asking the Court merely to decline to apply judicial immunity based on the circumstances of this case.  (*Id.* at 6-7.)

Fifth, the State Defendants argue that Plaintiff has not refuted their argument that the Complaint fails to state a cause of action.  (*Id.* at 7.)

Sixth, the State Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that Plaintiff has not provided any substantive opposition to this argument.  (*Id.* at 7.)

Seventh, the State Defendants argue that the Court should decline to grant Plaintiff leave to amend the Complaint because any amendments he could make would be futile.  (*Id.* at 8.)

## II.     GOVERNING LEGAL STANDARDS

### A.     Legal Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction."  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks

constitutional or statutory power to adjudicate it.  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys.*, Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

Generally, dismissals for lack of subject-matter jurisdiction must be without prejudice (because the Court lacks jurisdiction to pass on the merits of the claims asserted).  *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("One other wrinkle: when a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.'").

Finally, it appears to be a factually specific inquiry (if not an open question) whether a dismissal based on sovereign immunity is one based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or one based on a failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Compare Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit.... More recently, we held that the burden of proof in a case involving the assertion of sovereign immunity is on the party asserting it—a holding that we acknowledged is more consistent with the understanding that sovereign immunity was an

affirmative defense.") *with Dorking Genetics v. United States*, 76 F.3d 1261, 1264 (2d Cir. 1996)

(treating a dismissal of a claim under the Federal Tort Claims Act based on sovereign immunity

as one based on lack of subject-matter jurisdiction).

### B.   Legal Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204,

211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo*

review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F.

Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

14

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at

212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.

2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]." *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

## III.    ANALYSIS

### A.    Whether the Court Has Subject-Matter Jurisdiction Over Plaintiff's Claims

After careful consideration, the Court answers this question in the negative for the

reasons stated in the Defendants' memoranda of law related to the points discussed below.[3]  To

those reasons, the Court adds the following analysis.

As all parties appear to acknowledge, in order for a court to find that it lacks jurisdiction

over a plaintiff's claims under the *Rooker-Feldman* doctrine, four requirements must be met:

"'(1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district

court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court

judgment; and (4) the plaintiff must invite district court review and rejection of the judgment.'"

*Mulqueen v. Herkimer Cnty. Child Protective Servs.*, 22-CV-1301, 2023 WL 4931679, at *3

_____

defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

[3]        The Court does not adopt the alternative basis for finding a lack of subject-matter
jurisdiction asserted by many of the Defendants, *i.e.*, the domestic relations exception, because
the Second Circuit has held that the domestic relations exception to federal jurisdiction does not
apply in cases that are before the court on federal-question jurisdiction as opposed to diversity
jurisdiction.  *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019) (quoting *Williams v.
Lambert*, 46 F.3d 1275, 1284 [2d Cir. 1995]).  Although Plaintiff does not specify which
jurisdictional statute he was intending to proceed under, Defendants have highlighted that
diversity jurisdiction does not exist in this case because the parties all appear to be domiciled in
New York State.  (Dkt. No. 1, at ¶¶ 3-4.)  Further, Plaintiff has clearly asserted federal claims
pursuant to the Fourteenth Amendment of the United States Constitution (which, as Defendants
note, is enabled for suit through 42 U.S.C. § 1983, whether Plaintiff specifically cited to that
statute or not).  The Court therefore finds that there is no basis for concluding a lack of subject-
matter jurisdiction based on the domestic relations exception, and it declines to address whether
the related domestic relations abstention doctrine recognized by the Second Circuit would apply
here given that the Court lacks subject-matter jurisdiction over those same claims pursuant to the
*Rooker-Feldman* doctrine.  *Deem*, 941 F.3d at 623-25 (citing *Am. Airlines, Inc. v. Block*, 905
F.2d 12, 14 [2d Cir. 1990]).

(N.D.N.Y. Aug. 2, 2023) (Baxter, M.J.), report-recommendation adopted by 2024 WL 756833

(N.D.N.Y. Feb. 23, 2024) (Sannes, M.J.).  The Second Circuit has recently clarified that the

*Rooker-Feldman* doctrine "applies only after state-court proceedings have 'ended,'" and that

proceedings are not said to have ended if, at the time the plaintiff files the federal lawsuit, an

appeal of the relevant state-court proceeding is still pending in a state court.  *Hunter v.*

*McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 291 [2005]).  The Second Circuit highlighted that this is because "federal

courts 'assess jurisdiction . . . as of the moment the complaint was filed.'"  *Hunter*, 75 F.4th at 67

(quoting *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 [2d Cir. 2001]).

Plaintiff argues that the *Rooker-Feldman* doctrine does not apply in this case for various

reasons: (1) he did not actually lose in his state-court proceedings because the "intrinsic fraud

that occurred under the state court proceedings" denied him a fair trial; (2) the state-court

proceedings have not ended because appeals related to the relevant decisions are still pending;

and (3) he is not complaining of any injuries caused by the state-court judgments, but rather a

violation of his rights to due process and equal protection, and he is not asking for the review or

reversal of those judgments.[4]  (Dkt. No. 14, at 8; Dkt. No. 32, at 10; Dkt. No. 45, at 8.)

Plaintiff argues first that the *Rooker-Feldman* doctrine does not apply because the

underlying actions by Defendants, and the state-court decisions that resulted from those actions,

---

[4]      Although Plaintiff has asserted differing (but not conflicting) arguments regarding the
*Rooker-Feldman* doctrine in particular in his separate responses to the four motions to dismiss
under consideration in this Decision and Order, the Court will consider all those arguments
together when determining whether subject-matter jurisdiction exists as to any of the relevant
Defendants given his *pro se* status and the fact that all Defendants have raised the *Rooker-*
*Feldman* doctrine as a jurisdictional bar in their motions.

were fraudulent.  Claims based in fraud "are not barred by <u>Rooker-Feldman</u> if (i) they seek damages for injuries suffered from the alleged fraud and (ii) their adjudication 'does not require the federal court to sit in review of the state court judgment.'"  *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 275 (S.D.N.Y. 2018) (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 [2d Cir. 2014]) (discussing analogous case in which the Second Circuit found that fraud claims based on allegations that the defendants obtained the state court judgment fraudulently were barred by the *Rooker-Feldman* doctrine); *see also Lorick v. Kilpatrick Townsend and Stockton LLP*, 18-CV-7178, 2021 WL 7906510, at *7 (E.D.N.Y. Aug. 20, 2021) (quoting *Fiorolla v. Citigroup Glob. Mkts., Inc.*, 771 F. App'x 114, 115 [2d Cir. 2019]) ("Contrary to plaintiffs' suggestion, there is no 'fraud-on-the-court' exception to the *Rooker-Feldman* doctrine: The Second Circuit has 'clearly held that a plaintiff cannot rely on allegations that the state court judgment at issue was obtained fraudulently to avoid application' of that doctrine, since such an exception 'would require the federal courts to review the state proceedings and determine that the . . . judgment was issued in error, which *Rooker-Feldman* instructs we cannot do.'"); *Gurdon v. Bank*, 15-CV-5674, 2016 WL 721019, at *6 (S.D.N.Y. Feb. 23, 2016) (highlighting that there is no blanket fraud exception to the *Rooker-Feldman* doctrine, and that it applies even in cases where the injury is caused by a state court judgment that the plaintiff claims was obtained through fraud on the state court).  As will be discussed in more detail below, assessing whether fraud occurred would require the Court to review the correctness of the relevant state court decisions in this case.  Plaintiff's allegations of fraud are insufficient to overcome the fact that the decisions entered against him by the state courts were in

20

fact adverse to him such that he is considered to be the loser in that litigation for the purposes of the *Rooker-Feldman* doctrine.[5]

As to Plaintiff's second argument, it is undisputed that the relevant decisions that Plaintiff alleges deprived him of his rights occurred before he filed the federal Complaint, because the Appellate Division decisions that affirmed Judge Tomlinson's underlying substantive decisions were issued on October 21, 2021.  (Dkt. No. 1, Attach. 1, at 9-17, 121-23.)  In an attempt to overcome this fact, Plaintiff argues that the state-court proceedings had nonetheless not ended by the time he filed the federal Complaint because, as he asserts in one of his response memoranda, he "currently has an appeal pending in the 3rd Appellate Division to address the fraudulent contempt charge," and, "a motion for 'leave to appeal,' pending in the Court of Appeals, to address all the original fraudulent Appellate decisions," but the "response to that motion, from the Court of Appeals is now way overdue."  (Dkt. No. 45, at 8.)  He additionally states that he "was again dragged back into court by Mr. Newman, on January 31, 2024, while suffering a jaw infection, and barely able to communicate, to deal with ongoing litigation related to the 3rd Appellate fraudulent pension decision."  (Dkt. No. 45, at 6.)

As an initial matter, the Court notes that none of these allegations appear in the Complaint itself, nor has Plaintiff made any formal attempt to amend the Complaint to include them.  That, however, is not fatal under the circumstances.  "[S]pecial solicitude requires a court to consider new factual assertions contained in a *pro se* plaintiff's response to a defendant's

---

[5]     Plaintiff's citation to an exception based on alleged bad faith, harassment, and extraordinary circumstances is unavailing because that exception is related to the *Younger* abstention doctrine, not the *Rooker-Feldman* doctrine, and therefore does not apply under the circumstances presented here.  (Dkt. No. 45, at 5-6.)

motion to dismiss for failure to state a claim (to the extent that those new factual assertions are consistent with the factual allegations of the operative pleading)[.]" *Weather v. New York State Police*, 19-CV-0400, 2019 WL 5387448, at *3 (N.D.N.Y. Oct. 22, 2019) (Suddaby, C.J.) (citing *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 n.1 [2d Cir. 1998]). The Court will therefore consider these allegations to the extent they are relevant to (and consistent with) Plaintiff's claims. The only allegation Plaintiff makes related to any ongoing proceedings within the Complaint itself is a statement that, as a result of Judge Bruening's denial of Plaintiff's motion to reargue Judge Tomlinson's decision on a contempt of court motion filed by Defendant Newman seeking to enforce a prior judgment, "the Plaintiff will now be forced to file another appeal," which will "be heard by the 3AD." (Dkt. No. 1, at ¶¶ 188-89.) There is no indication that Plaintiff had filed any such appeal before the time he filed the Complaint in this action.

Based on information submitted by Plaintiff as part of the Complaint, the relevant decision by Judge Tomlinson on the contempt motion is dated December 13, 2022. (Dkt. No. 1, at 362.) Under New York procedural law, a party must take an appeal as of right within 30 days after service of a copy of the judgment or order to be appealed. N.Y.C.P.L.R. § 5513(a). Given that information submitted with the Complaint shows that Plaintiff filed a motion to reargue that decision on December 30, 2022, the Complaint itself appears to allege that Plaintiff was served with that judgment prior to that date. (Dkt. No. 1, Attach. 1, at 345-48.) Yet Plaintiff's own allegations also suggest that he had not appealed that decision by the time he filed the Complaint nearly a year later on December 4, 2023. (Dkt. No. 1, at ¶¶ 188-89.) Although it is true that Plaintiff filed a motion to reargue in the interim, "it is well settled that a motion to reargue may not be used by a party to extend its time to appeal." *Forbes v. Giacomo*, 11 N.Y.S.3d 485, 486

22

(N.Y. App. Div. 1st Dept. 2015); *Haughton v. F.W.D. Corp.*, 598 N.Y.S.2d 994 (N.Y. App. Div. 2d Dept. 1993); *Williamson v. Shang*, 423 N.Y.S.2d 767, 836 (N.Y. App. Div. 4th Dept. 1979). Plaintiff did not seek a stay of the time to appeal the underlying decisions by Judge Tomlinson pending resolution of the motion to reargue, and Judge Bruening denied his motion to reargue. (Dkt. No. 1, Attach. 1, at 345-58, 377-82.)  Further, to the extent that Plaintiff's Complaint could be construed as alleging that the appeal he would need to take was from the decision on the motion to reargue, the denial of a motion to reargue is not appealable.  *Boyle v. NYS Dep't of Motor Vehicles*, 161 N.Y.S.3d 346, 349 (N.Y. App. Div. 3rd Dep't 2021); *Nulman v. Hall*, 495 N.Y.S.2d 796, 797 (N.Y. App. Div. 3rd Dept. 1985).  As a result, Plaintiff has not alleged that any appeal of the contempt decision was pending at the time the federal Complaint was filed, nor that any appeal he may have filed after Judge Bruening denied the motion to reargue would be timely or valid so as to constitute an ongoing proceeding on the relevant motion.

Plaintiff also argues that he has sought "leave to appeal" the "original" Appellate Division decisions to the New York Court of Appeals, yet neither the Complaint nor his memoranda includes allegations to plausibly suggest that he had filed any such motion to appeal by the time he filed his federal Complaint; instead, he seems to allege in the Complaint that he had not filed any such appeal because he believed it would not have been within that court's jurisdiction.  (*See* Dkt. No. 1, at ¶ 26 [alleging that "these cases are beyond the 'Court of Appeals' jurisdiction and would certainly result in a 'Res judicata' denial"].)  Further, as with the above-discussed alleged appeal to the Third Department of the contempt decision, there is no indication that any such motion for leave to appeal to the Court of Appeals was timely.  Of note, the Appellate Division decisions related to Judge Tomlinson's substantive rulings regarding the

terms of the divorce stipulation are dated October 21, 2021.  (Dkt. No. 1, Attach. 1, at 9-17, 121-23.)  Plaintiff filed a motion to reargue related to at least one of these decisions on November 1, 2021, and then a motion to vacate both decisions on November 14, 2022, which was denied by the Appellate Division on December 15, 2022.  (Dkt. No. 1, Attach. 1, at 273, 297, 316-17.)  Even accounting for Plaintiff's allegation that he did not learn of one of the Appellate Division's decisions until November 2022, the time to appeal or move for permission to appeal the decisions even at that point had long since passed by the time Plaintiff filed the federal Complaint more than a year later in December of 2023, and there is nothing provided in Plaintiff's submissions to plausibly suggest that he filed any such motion for leave to appeal before he filed the federal Complaint.  (Dkt. No. 1, at ¶ 137.)  Therefore, even if the Court were to accept Plaintiff's new allegation that he has sought leave to appeal the Appellate Division's decisions to the Court of Appeals, nothing has been presented to plausibly suggest that any such appeal would be timely in a manner that would allow the Court to conclude that the underlying state-court proceedings had not effectively ended by the time of Plaintiff filed the federal Complaint.

Lastly, to the extent that Plaintiff argues he was "dragged back into court" by Defendant Newman, it is not clear what was involved in that alleged new conduct by Defendant Newman, and Plaintiff's statement that it was "related to the 3rd Appellate fraudulent pension decision" is too vague to plausibly suggest that this was a continuation of the Third Department's orders of December 21, 2021, as opposed to a new and separate motion made by Defendant Newman to enforce such orders.  If it was a new motion to enforce in some manner, it should not properly be considered to be part of a state-court proceeding that was already pending at the time Plaintiff

24

filed his federal Complaint.  Although the Court is required to draw all reasonable inferences in favor of Plaintiff at this stage, that does not absolve Plaintiff of the responsibility to provide information that is specific enough to allow the Court to determine what he is actually alleging; he does not say what court he was "dragged into" or provide any information regarding what this new development involved other than "ongoing litigation related to" the Third Department's affirmance of the decisions of the Supreme and Family Court judges on the matter of his pension.  Thus, even if the Court were to extra-liberally construe these new assertions as proper allegations (despite the fact that they relate to conduct engaged in after the Complaint was filed), Plaintiff has simply not provided sufficient information to even plausibly suggest that this activity represented a continuation of the relevant state-court proceedings in a way that is relevant to the issue of subject-matter jurisdiction.

Simply put, Plaintiff has not included any factual allegations, either in the Complaint itself or in his response memoranda of law, to even plausibly suggest that the decisions that caused his alleged injury were not final at the time he filed his federal Complaint.  The only exception to this would be if Plaintiff filed a timely appeal to the Appellate Division related to Judge Bruening's granting of attorney's fees to Plaintiff's ex-wife, which was based on an application filed by Defendant Newman after Judge Tomlinson granted the contempt motion. (Dkt. No. 1, Attach. 1, at 378, 381.)  However, although Plaintiff discusses this decision in the Complaint and states that he will be "forced" to appeal it, there is no indication as to whether he did indeed file a timely appeal of the decision on that motion for attorney's fees to the Appellate Division, only a statement in one of his response memoranda of law that he has filed an appeal to

the Appellate Division "to address the fraudulent contempt charge." (Dkt. No. 1, at ¶¶ 42; Dkt. No. 45, at 8.)

Turning to the remaining two elements, the Court finds that the Complaint both alleges injuries caused by the state court's judgments and seeks to have this Court review those judgments. There is no escaping that the injuries Plaintiff complains of were a direct result of the decisions of Judge Tomlinson and their affirmance by the Appellate Division; he alleges that his rights have been violated and he has been denied justice by "the fraudulent litigation and decisions" and that he has been "denied justice, tortured and held captive" as a result of these decisions and the court proceedings and actions they have required for five years during this litigation, which has caused him mental anguish, denied him time and peace to heal from his medical issues, and prevented him from making financial commitments "due to the fear of impending fraudulent decisions and their huge financial impact." (Dkt. No. 1, at ¶¶ 192-93, 205-13.) Further, although Plaintiff argues that he does not seek to have this Court review the merit or substance of the state court's decisions, the question of whether his rights to due process and equal protection were violated by the allegedly biased or "fraudulent" actions of the relevant judges or attorneys inherently would require this Court to assess whether those state court decisions were correctly decided; there can be no violation of his constitutional rights under the circumstances presented if the arguments or conclusions of the attorneys and judges have a reasonable basis in the applicable state law.

For all of the above reasons, the Court finds that it lacks subject-matter jurisdiction over Plaintiff's claims to the extent they are based in the effects of the state-court proceedings. This finding encompasses all claims against Defendant Balzer, Defendant Newman, Defendant Balzer

26

& Leary, Defendant Becker Firm, Defendant Fleischman Firm, and Defendant New York State Commission on Judicial Conduct s/h/a New York State Judicial Review Committee, as well as the claims against Defendant New York State Unified Court System for actions related to the state-court proceedings.  Such claims are dismissed without prejudice.  *Katz*, 872 F.3d at 121.

### B.   Whether Remaining Claims Against Defendant New York State Unified Court System Are Barred By the Eleventh Amendment

To the extent that the *Rooker-Feldman* doctrine does not deprive the Court of subject-matter jurisdiction over all of Plaintiff's claims, the Court further answers the above question in the affirmative for the reasons that were discussed in Defendants' memoranda of law.  In particular, Plaintiff's allegations related to a deprivation of his due process or equal protection rights based on the actions of the State Defendants in failing to properly respond to his FOIL requests do not necessarily hinge on the state-court proceedings.

The Eleventh Amendment "means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'"  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. Of Educ.*, 466 F.3d 232, 236 [2d Cir. 2006]).  This immunity "'extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.'"  *Gollomp*, 568 F.3d at 366 (quoting *Woods*, 466 F.3d at 236).  "Accordingly, 'a governmental entity is entitled to Eleventh Amendment immunity only if it is more like an arm of the State, such as a state agency, than like a municipal corporation or other political subdivision.'"  *Gollomp*, 568 F.3d at 366 (quoting *Woods*, 466 F.3d at 236).

27

The Second Circuit has unequivocally held that the New York State Unified Court System is an arm of the state and thus entitled to sovereign immunity. *Gollomp*, 568 F.3d at 366-68. To the extent that it might be relevant, the Court also notes that the Second Circuit and courts within it have affirmed that the New York State Commission on Judicial Conduct is an arm of the state and likewise immune. *McKeown v. New York State Comm'n on Judicial Conduct*, 377 F. App'x 121, 123 (2d Cir. 2010); *see also Vazquez v. City of New York*, 21-CV-1573, 2021 WL 1966397, at *9 (S.D.N.Y. May 17, 2021); *Robertson v. Allen*, 15-CV-0011, 2016 WL 205381, at *9 (N.D.N.Y. Jan. 15, 2016) (Sharpe, J.); *Ryan v. Cholakis*, 13-CV-1451, 2014 WL 803776, at *5 (N.D.N.Y. Feb. 25, 2014) (Suddaby, J.). Because Eleventh Amendment sovereign immunity applies to the State Defendants, the question is therefore whether that immunity has been waived.

Plaintiff's reliance on *Brown v. State*, 89 N.Y.2d 172 (N.Y. 1996), as standing for the proposition that New York State has waived its sovereign immunity for constitutional tort claims (and specifically for equal protection claims) is misplaced, given that such case assessed whether New York law waives such immunity specifically for suits brought in New York's Court of Claims. *See Brown*, 89 N.Y.2d at 179-83 (discussing that the basis for the waiver of immunity in that case was found in New York's Court of Claims Act, which defines the jurisdiction of that court). Whether New York State may have waived its sovereign immunity for suits brought in certain state courts has no bearing on whether it has waived such immunity for suits brought in federal courts. Because there has been no indication presented in Plaintiff's Complaint or otherwise that New York State has waived its sovereign immunity for the relevant claims, either as a general matter or in this specific instance, and because the State Defendants deny that it has,

28

the Court finds that any of Plaintiff's claims against Defendant New York State Unified Court System over which this Court has subject-matter jurisdiction are barred by the Eleventh Amendment.

C.   **Whether Plaintiff Should Be Provided An Opportunity to Amend the Complaint**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.B.1.a, c, and I.B.2.a, c. of this Decision and Order.  To those reasons the Court adds the following brief analysis.

Although a *pro se* plaintiff is generally to be afforded an opportunity to amend his or her complaint to cure defects, "leave to amend is not required where it would be futile." *Robinson v. Wright*, 21-CV-1098, 2023 WL 6122882, at *5 (N.D.N.Y. Sept. 19, 2023) (McAvoy, J.) (citing *Hill v. Curcione*, 657 F.3d 116, 123-24 [2d Cir. 2011]).  The identified defects in Plaintiff's Complaint relate to a failure to allege conditions giving rise to subject-matter jurisdiction, and the Court is not convinced that Plaintiff could present any additional allegations that would cure those defects, specifically given that the allegations already provided suggest that any appeals that might be pending related to the state-court decisions were not timely submitted under New York's rules of civil procedure or before Plaintiff filed the federal Complaint in this action. Further, to the extent that claims remain against Defendant New York State Unified Court System over which the Court has subject-matter jurisdiction, Plaintiff has offered no reason to believe (despite filing a Complaint with attachments that totals 418 pages and having the opportunity to submit four responsive memoranda related to the current motions to dismiss) that he can put forth sufficient allegations to plausibly suggest that sovereign immunity would not apply to the New York State Defendants.  Because permitting Plaintiff an opportunity to amend

29

the Complaint would be futile in this case, the Court finds that the Complaint should be dismissed without such opportunity to amend.

ACCORDINGLY, it is

ORDERED that Defendants' motions to dismiss (Dkt. Nos. 8, 21, 29, 39) are

**GRANTED**; and it is further

ORDERED that Plaintiff's Amended Complaint (Dkt. No. 1) is **DISMISSED** without prejudice.

Dated: June 20, 2024
    Syracuse, New York

Glenn T. Suddaby
U.S. District Judge